OPINION
{¶ 1} Appellant, Kara R. Wyatt, appeals from the May 26, 2004 judgment entry of the Portage County Court of Common Pleas, Domestic Relations Division.
 {¶ 2} On July 15, 1994, appellant and appellee, David J. Wyatt, Jr., were married. Three daughters were born as issue of the marriage: Alexis Wyatt, who was born on January 2, 1996, Lauren Wyatt, whose date of birth is August 22, 1997, and Abigail Wyatt, who was born on June 23, 2003. Appellee filed for divorce on November 6, 2003, alleging incompatibility and guilty acts of misconduct by appellant. On that same date, appellee filed a motion for temporary orders. He requested temporary custody of the minor children as well as child and spousal support.[1] A hearing was held on appellee's motion for temporary orders. After the hearing, the court reserved its ruling on temporary custody of the children and child support since the parties were still residing together.
 {¶ 3} On January 28, 2004, appellant filed a motion for temporary child and spousal support because the parties were living separately. On February 4, 2004, the parties filed financial affidavits. The trial court conducted a hearing on the issues on February 6, 2004. On February 13, 2004, the court awarded temporary custody of the parties' two minor children to appellant and ordered that appellee pay appellant temporary child support in the amount of $712.60 per month plus poundage in addition to a temporary spousal support award of $300 per month plus poundage.
 {¶ 4} On March 9, 2004, appellee filed a motion requesting the appointment of a guardian ad litem ("GAL"), and on March 10, 2004, the court appointed a GAL. On March 11, 2004, appellant filed a motion seeking the court's permission to move with her three minor children to the state of Minnesota. Appellee filed an objection to the motion for relocation on March 16, 2004. In his report, the GAL recommended that appellant be awarded custody of the minor children, and, if appellant insisted on moving to Minnesota, the children would be evaluated by a psychologist to determine if such a move was in their best interest.
 {¶ 5} A trial on the contested issues was held on May 6, 2004. On May 18, 2004, appellee moved to admit the affidavits of Michael Murphy and Kristin Murphy. On May 19, 2004, the trial court allowed these affidavits to be admitted as evidence in the matter.[2] In an entry dated May 26, 2004, the trial court granted appellee's divorce, awarded custody of the two children initially to appellee, ordered appellant to pay child support to appellee in the sum of $196.34 per month, and divided the marital assets and debts. Specifically, the trial court stated that:
 {¶ 6} "Wife has indicated her intention to leave the [s]tate of Ohio and reside in the [s]tate of Minnesota with her new love interest and the father of the child, [Abigail]. If [w]ife were to be named residential parent, it would mean taking the children from the father, the children's friends, whatever extended family there is in the area, and changing school systems. The [c]ourt does not believe this to be in the best interests of the two minor children.
 {¶ 7} "Accordingly, it is further ORDERED, ADJUDGED and DECREED that the [h]usband shall be the sole residential parent and legal custodian of the minor children of the marriage and that the [w]ife shall have reasonable parenting time. The parenting time of [w]ife shall, at a minimum, be no less than that considered by the [c]ourt to be its `Standard Out-of-State Order,' a copy of which is attached and made a part of this [d]ecree. Should the [w]ife elect not to change her Ohio residency, she shall be named residential parent, but shall not remove the children from the jurisdiction of the [c]ourt without permission and [h]usband shall have reasonable parenting time, which shall, at a minimum, be no less than that considered by the [c]ourt to be its `Standard Order.'"
 {¶ 8} Appellant timely filed the instant appeal and now assigns the following as error:
 {¶ 9} "[1.] The trial court erred and abused its discretion when it named [a]ppellant the sole residential parent and legal custodian of the parties' minor children on condition she not move out-of-state.
 {¶ 10} "[2.] The trial court erred and abused its discretion when it failed to award [a]ppellant child and [spousal] support in its final [j]udgment [e]ntry."
 {¶ 11} Under her first assignment of error, appellant asserts that the trial court erred when it named her the sole residential parent and legal custodian of the two minor children on the condition that she not move out of the state of Ohio.
 {¶ 12} An appellate court's standard of review in custody matters is abuse of discretion. Miller v. Miller (1988), 37 Ohio St.3d 71, 74. In order to find an abuse of discretion, we must determine if the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 13} "When applying an abuse-of-discretion standard, a reviewing court is not free merely to substitute its judgment for that of the trial court. * * * This highly deferential standard of review rests on the premise that the trial judge is in the best position to determine the credibility of witnesses because he or she is able to observe their demeanor, gestures, and attitude. This is especially true in a child custody case, since there may be much that is evident in the parties' demeanor and attitude that does not translate well to the record." In reL.S., 152 Ohio App.3d 500, 2003-Ohio-2045, at ¶ 12.
 {¶ 14} In the instant matter, the trial judge heard the testimony of appellant's and appellee's witnesses. He also considered the GAL's report. During the May 6 hearing, appellant testified that she had an interest to move to Minnesota with her children because she had job opportunities there, and she had sent a lot of documentation to a university there to attain a master's degree. She further stated that she would have the opportunity to have a better, more stable life. The trial court then awarded custody of the two children to appellant on a conditional basis without ordering appellee to pay spousal and child support to appellant.
 {¶ 15} However, it is our view that the trial court committed error in the manner in which it structured its order because of the ambiguous language employed. The trial court created a situation of uncertainty as to which of the parties was the custodial or residential parent and, further, imposed conditions that make it impossible for us to determine from the framework of the record before us whether appellant or appellee is the residential parent.
 {¶ 16} On remand, the trial court is to resolve the issue with certainty as to which parent is in fact the residential or custodial parent and what other respective responsibilities result. Appellant's first assignment of error has merit.
 {¶ 17} For the second assignment of error, appellant alleges that the trial court erred and abused its discretion when it failed to award appellant child and spousal support in its final judgment entry. Based on our resolution of appellant's first assignment of error, it would be premature to address appellant's second assignment of error at this time.
 {¶ 18} For the foregoing reasons, appellant's first assignment of error is welltaken, and to address appellant's second assignment of error would be premature. The judgment of the Portage County Court of Common Pleas, Domestic Relations Division, is reversed, and the cause is remanded for further proceedings consistent with this opinion.
Grendell, J., O'Toole, J., concur.
[1] On December 1, 2003, appellee filed a motion for paternity testing because of certain statements made by appellant that called into doubt the paternity of the youngest minor child. The notice of the genetic test results was filed with the trial court on January 13, 2004, which revealed that there was a zero percent probability that appellee was the biological father of Abigail.
[2] In the affidavit of Michael Murphy, appellant's brother-in-law, he indicated that appellant and her children went to a motel where her boyfriend was staying. Appellant and her boyfriend then either had sex in front of the children or left the children alone and had sex in another room. In the affidavit of Kristen Murphy, appellant's sister, she indicated that she was unable to testify at the May 6 hearing because she was in labor, but had she been at the hearing, she would have stated that while on a threeway call with appellant and her boyfriend, he threatened to kill her.