[Cite as *Thomas v. Thomas*, 2023-Ohio-3941.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

| | |
|---|---|
| TRISHA J. THOMAS, | CASE NO. 2023-T-0015 |
| Plaintiff-Appellant, | |
| - vs - | Civil Appeal from the Court of Common Pleas, Domestic Relations Division |
| EDWARD L. THOMAS, JR., | |
| Defendant-Appellee. | Trial Court No. 2017 DR 00123 |

**O P I N I O N**

Decided: October 30, 2023
Judgment: Affirmed

*Brendan J. Keating*, Guarnieri & Secrest, PLL, 151 East Market Street, P.O. Box 4270, Warren, OH 44482 (For Plaintiff-Appellant).

*J.P. Morgan*, 173 West Market Street, Warren, OH 44481 (For Defendant-Appellee).

*Joshua R. Staton*, 179 North Dunlap Avenue, Youngstown, OH 44509 (Guardian ad litem).

MARY JANE TRAPP, J.

{¶1} Appellant, Trisha J. Thomas ("Trisha"), appeals the judgment of the Trumbull County Court of Common Pleas, Domestic Relations Division, overruling her objections to the magistrate's decisions and denying her motion to terminate the shared parenting plan between herself and her former spouse, appellee Edward L. Thomas, Jr. ("Edward").

{¶2} Trisha asserts one assignment of error, contending the trial court abused its discretion by failing to terminate the shared parenting plan as being in the children's

best interest. According to Trisha, the evidence indicates the parties failed to cooperate and make decisions jointly regarding the children.

{¶3} After a careful review of the record and pertinent law, we find the trial court did not abuse its discretion in adopting the magistrate's decision and denying Trisha's motion. The findings underlying the trial court's best interest determination are supported by competent, credible evidence in the record. Thus, we affirm the judgment of the Trumbull County Court of Common Pleas, Domestic Relations Division.

## Substantive and Procedural History

{¶4} Trisha and Edward were married in 2008. They have two sons together who were born, respectively, in 2009 and 2011. In 2018, the trial court granted the parties a divorce. The final decree incorporated a shared parenting plan signed by the parties.

{¶5} Trisha is originally from Fargo, North Dakota, where her family still resides. She currently lives in Niles, Ohio, and is employed by the county court system. She desires to relocate to North Dakota with her boyfriend, their one-year-old child, and the parties' two sons.

{¶6} Edward was raised in the Niles, Ohio, area and currently lives about five minutes away from Trisha in their former marital residence. Edward works the overnight shift (i.e., 6:30 p.m. to 6:30 a.m.) at a distribution company. His parents live a few streets away, and his sister lives in the area. Trisha and Edward's parents do not speak to each other.

{¶7} Pursuant to the shared parenting plan, Edward has custody of the children a few days during the week until 8 p.m. and overnight for two consecutive weekends a

2

month. Trisha has custody at all other times. Both sons do well in school and are involved in sports and other activities.

{¶8}   In 2021, Trisha filed a motion to terminate the parties' shared parenting plan, alleging the plan is not in the children's best interest and the parties cannot communicate for the children's benefit. She requested an order permitting her to relocate to North Dakota and designating her as the children's sole residential parent and legal custodian. Edward filed a cross-motion to terminate the plan. He requested an order naming him as the children's residential parent and legal custodian. The trial court appointed Attorney Joshua Staton as the children's guardian ad litem ("the GAL").

{¶9}   In May 2022, the magistrate held an evidentiary hearing on the parties' motions. Trisha testified regarding the parties' purported lack of communication and cooperation. For instance, Trisha became concerned about the older son's weight, and his doctor suggested portion control; however, Edward failed to provide healthy food choices or control the child's food intake. The younger son began exhibiting symptoms consistent with ADHD. Edward would not address the situation until the child was officially diagnosed. When the child was subsequently diagnosed and entered therapy, Edward attended only a few of 20 sessions.

{¶10}  Edward does not consistently attend the younger son's hockey games or either child's parent-teacher conferences. Edward also permits the children to play video games to an excessive degree, which has a detrimental effect on their behavior.

{¶11}  Trisha punishes the children through grounding when they do not listen or are disobedient. Edward will not continue the grounding at his house if he considers it unwarranted.

3

Case No. 2023-T-0015

{¶12} According to Trisha, she has been the primary caregiver for everything involving the children, while Edward has not taken the lead on any issue.

{¶13} Edward denied he allowed the children to play video games to an excessive degree. He stated the children often play online games where they can interact with their friends. Sometimes, he and the children play video games together, and they also engage in outdoor and physical activities.

{¶14} Edward also testified he takes his sons to practices and games when it fits his work schedule; however, he is concerned about the expense of hockey, which he cannot afford. He also attends parent-teacher conferences on his own. Previously, he was not made aware of their occurrence.

{¶15} Further, the doctor stated the older son's weight was fine as long as he kept growing. Edward does not perceive the child as being overweight. While he does not count calories or measure portions, he feeds them appropriate food.

{¶16} Edward conceded his communication with Trisha is "limited." He testified many of Trisha's text messages are "repetitive," and he will often just tell her "Okay" to avoid an argument. He denied Trisha was the children's primary caregiver but acknowledged she often "takes the reigns."

{¶17} The GAL recommended the trial court deny both parties' motions to terminate the shared parenting plan and keep the children on the same schedule. While he stated he has no major concerns about the parties' parenting skills, he considers Trisha to be the better parent. In particular, Trisha is stricter on the children and provides them with more structure and responsibilities, while Edward is more lenient and allows the children to play too many video games and do less chores.

4

{¶18} Following the hearing, the magistrate conducted an in-camera interview of the children.

{¶19} In June 2022, the magistrate filed a decision recommending it would be in the children's best interest to deny both parties' motions to terminate the shared parenting plan. The magistrate made express findings under each factor in R.C. 3109.04(F)(1) and (F)(2).

{¶20} The trial court filed a judgment entry approving and adopting the magistrate's decision. Trisha filed objections to the magistrate's decision, which she supplemented following the preparation and filing of the trial transcript. Edward filed a response opposing Trisha's objections. He did not file any objections.

{¶21} On January 31, 2023, the trial court filed a judgment entry in which it overruled Trisha's objections and denied both parties' motions to terminate the shared parenting plan.

{¶22} Trisha appealed and raises the following sole assignment of error:

{¶23} "The Trial Court abused its discretion under R.C. 3109.04(E)(2) when it failed to terminate the Appellant and Appellee's Shared Parenting Plan as being in the best interest of the parties' children where the parties have failed to cooperate and make decisions jointly with respect to the children."

**Standard of Review**

{¶24} "[D]ecisions involving the custody of children are accorded great deference on review." *In re K.R.*, 11th Dist. Trumbull No. 2010-T-0050, 2011-Ohio-1454, ¶ 28. "Thus, any judgment of the trial court involving the allocation of parental rights and responsibilities will not be disturbed absent a showing of an abuse of discretion." *Id.*

5

"Further, we review a judgment of the trial court adopting the decision of its magistrate for an abuse of discretion." *Id.*

{¶25} An abuse of discretion is the "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 62, quoting *Black's Law Dictionary* 11 (8th Ed.Rev.2004). "[W]here the issue on review has been confided to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error." *Id.*

{¶26} "The highly deferential abuse-of-discretion standard is particularly appropriate in child custody cases since the trial judge is in the best position to determine the credibility of the witnesses and there 'may be much that is evident in the parties' demeanor and attitude that does not translate well to the record.'" *In re K.R.* at ¶ 30, quoting *Wyatt v. Wyatt*, 11th Dist. Portage No. 2004-P-0045, 2005-Ohio-2365, ¶ 13. "In so doing, a reviewing court is not to weigh the evidence, 'but must ascertain from the record whether there is some competent evidence to sustain the findings of the trial court.'" *Id.*, quoting *Clyborn v. Clyborn*, 93 Ohio App.3d 192, 196, 638 N.E.2d 112 (3d Dist.1994).

**Legal Requirements**

{¶27} R.C. 3109.04(E)(2)(c) provides, "The court may terminate a prior final shared parenting decree that includes a shared parenting plan * * * upon the request of one or both of the parents or whenever it determines that shared parenting is not in the best interest of the children." "In determining whether shared parenting is in the best interest of the children, the court shall consider all relevant factors, including, but not limited to, the factors enumerated in" R.C. 3109.04(F)(1) and (F)(2). R.C. 3109.04(F)(2).

6

{¶28} The factors in R.C. 3109.04(F)(1) are:

{¶29} "(a) The wishes of the child's parents regarding the child's care;

{¶30} "(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

{¶31} "(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

{¶32} "(d) The child's adjustment to the child's home, school, and community;

{¶33} "(e) The mental and physical health of all persons involved in the situation;

{¶34} "(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

{¶35} "(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

{¶36} "(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to [certain criminal offenses] * * *;

{¶37} "(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

{¶38} "(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state." R.C. 3109.04(F)(1)(a)-(j).

{¶39} The factors in R.C. 3109.04(F)(2) are:

7

Case No. 2023-T-0015

**{¶40}** "(a) The ability of the parents to cooperate and make decisions jointly, with respect to the children;

**{¶41}** "(b) The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;

**{¶42}** "(c) Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent;

**{¶43}** "(d) The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;

**{¶44}** "(e) The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem." R.C. 3109.04(F)(2)(a)-(e).

### Analysis

**{¶45}** Trisha's assignment of error is based on R.C. 3109.04(F)(2)(a), which involves "[t]he ability of the parents to cooperate and make decisions jointly, with respect to the children." As Trisha correctly notes, this court has held "the failure of parents to communicate and/or cooperate effectively are grounds for terminating a shared parenting plan." *Duricy v. Duricy*, 11th Dist. Trumbull Nos. 2009-T-0078 and 2009-T-0118, 2010-Ohio-3556, ¶ 43. For example, in *In re Powell*, 11th Dist. Lake No. 2000-L-044, 2001 WL 636924 (June 8, 2001), we affirmed the trial court's termination of the shared parenting plan where the evidence indicated there was great hostility between the parties; the father had difficulty discovering where the mother was living at certain times; and the parties argued over vacations, education, and holidays. *Id*. at *6.

**{¶46}** However, termination of a shared parenting plan is not required whenever this factor is implicated. For instance, in *Duricy*, we found no abuse of discretion in the

8

trial court's denial of the father's motion to terminate a shared parenting plan despite the parents' alleged inability to cooperate effectively. We found "[t]he record before us supports the impression that communication between [the parties] is problematical" but "does not demonstrate that [the parties'] communication problems are so detrimental to the children's interests as to require the termination of the shared parenting plan." *Id.* at ¶ 44, ¶ 46.

{¶47} Trisha contends the magistrate's finding under this factor that "[t]he parents do not appear to be overly cooperative in making joint decisions for the benefit of their sons" is an "understatement." She emphasizes evidence purportedly demonstrating Edward's shortcomings in cooperating and communicating.

{¶48} Trisha does not acknowledge Edward's testimony, where he disputed several aspects of her testimony. In addition, Trisha fails to quote the remainder of the magistrate's finding under this factor, which was, "However, given the apparent personalities and/or parenting styles of the parties, [Edward] appears willing to let [Trisha] be the primary decision maker. This dynamic appears to be working for the benefit of [the children]." In essence, after hearing the parties' conflicting testimony, the magistrate apparently determined their cooperation and communication problems were not detrimental to the children.

{¶49} "A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court." *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 81, 461 N.E.2d 1273 (1984). This is because "the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations

9

in weighing the credibility of the proffered testimony." *Id.* at 80. "A fact finder is free to believe all, some, or none of the testimony of each witness appearing before it." *State v. Fetty*, 11th Dist. Portage No. 2011-P-0091, 2012-Ohio-6127, ¶ 58.

{¶50} To the extent Trisha is contending the trial court should have accorded more weight to the parties' problems in these areas, "the trial court possesses discretion in determining which factors are relevant[.]" *Janecek v. Marschall*, 11th Dist. Lake No. 2015-L-065, 2015-Ohio-5219, ¶ 16. "[N]ot all factors carry the same weight or have the same relevance; rather, their relative import depends upon the facts of the case." *Id.*

{¶51} Here, the magistrate expressly considered several other factors in determining it was *not* in the children's best interest to terminate shared parenting. For instance, the magistrate noted the children's desires and comments expressed to him during the in-camera interview. The magistrate also found (1) the children have adjusted well to the shared parenting plan, they are doing well in school, and their current community is the only one they have ever known; (2) the parties currently live in close proximity to each other, which has benefitted the children; (3) there are no "real concerns" regarding the children's physical or mental health; (4) while moving to North Dakota may be beneficial to Trisha, the magistrate was not convinced it would be beneficial to or in the best interest of the children; and (5) the GAL recommended that the trial court deny both parents' motions and maintain the current schedule.

{¶52} Trisha next challenges the magistrate's finding that "too much time with [Trisha] and her rules would not be in the boys' best interest." According to Trisha, "healthy eating, exercise, attention to schoolwork, involvement in extra-curricular

Case No. 2023-T-0015

activities, and keeping off mind-numbing television and video games" are all in the children's best interest.

{¶53} Trisha quotes the magistrate's finding out of context. Contrary to Trisha's suggestion, the magistrate did not reject those concepts. The statutory factor in R.C. 3109.04(F)(1)(d) involves "[t]he child's adjustment to the child's home, school, and community[.]" The magistrate found while "too much time with [Trisha] and her rules would not be in the boys' best interest[,] * * * too much time with [Edward] and his lax rule structure would [also] not be in the boys' best interest. Whether the parties want to accept this reality or not, it appears that the current [shared parenting plan] and parenting time allocation is in the best interest of [the children]."

{¶54} Finally, Trisha contends "there is nothing in the record to indicate a relocation would not be in the children's best interest," while "there is evidence a relocation to Fargo would be in the children's best interest." She emphasizes how moving to Fargo would allow her to have more family support and to earn more money.

{¶55} We disagree with Trisha's characterization of the record. After hearing the testimony and interviewing the children, the magistrate concluded the shared parenting plan was the children's "stability," which has "a very tenuous balance." Meanwhile, the beneficial circumstances Trisha references relate more directly to *her* best interest, not necessarily the children's. Therefore, the magistrate's findings regarding relocation have reasonable support in the evidentiary record.

{¶56} In sum, the magistrate considered each of the factors in R.C. 3109.04(F)(1) and (F)(2) in determining the children's best interest, and its findings are supported by competent, credible evidence in the record. Accordingly, the trial court did not abuse its

Case No. 2023-T-0015

discretion in adopting the magistrate's decision and denying Trisha's motion to terminate the parties' shared parenting plan.

{¶57} Trisha's sole assignment of error is without merit.

{¶58} For the foregoing reasons, the judgment of the Trumbull County Court of Common Pleas, Domestic Relations Division, is affirmed.

MATT LYNCH, J.,

EUGENE A. LUCCI, J.,

concur.

Case No. 2023-T-0015